UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN R. DENT,

              Plaintiff,

  -vs-

SUPERCUTS (Regis Corporation),

              Defendant.
_____

03-CV-0947E(F)

MEMORANDUM

and

ORDER[1]

Plaintiff commenced this employment discrimination action on December 19, 2003 claiming that defendant Supercuts — plaintiff's former employer — had discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.,* and the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law §290 *et seq.* Defendant, on December 27, 2004, filed a Motion for Summary Judgment dismissing plaintiff's Complaint and, on February 9, 2005, filed Objections to the Authenticity of Electronically Filed Documents ("the Objections"). For the reasons set forth below, the Objections will be denied, defendant's Motion for Summary Judgment will be granted and plaintiff's claims will be dismissed.

Defendant claims that plaintiff's papers in opposition to defendant's Motion for Summary Judgment violate the Local Rules of Civil Procedure ("LRCvP") and

---

[1] This decision may be cited in whole or in any part.

should be stricken. Plaintiff failed to comply with LRCvP 7.1(e) in that she failed to file a memorandum of law in opposition to defendant's Motion and with LRCvP 56.1(d) in that she failed to cite any evidence in her statement of disputed facts. Plaintiff's papers are further deficient — as defendant asserts in its Objections — in that plaintiff's affidavit initially was not notarized and that the authenticity of Jane Jarzyniecki's affidavit is questionable, at best.[2] Although both these deficiencies are grounds for sanctions and clearly indicate that plaintiff's counsel has pursued an unethical and sub-par practice, the Court does not find it necessary to punish plaintiff for her counsel's incompetency and will make its findings of facts based on all the papers and evidence before the Court.

The facts, viewed in the light most favorable to plaintiff — the non-moving party —, are found as follows and are undisputed except where otherwise noted. Defendant operates a chain of salons that provides hairstyling services and sells professional salon products. Defendant trains stylists and has policies and procedures in place regarding proper hair-cutting techniques, customer service and satisfaction and conduct within the workplace. Each salon has a Salon Manager who reports directly to the Area Supervisor and is responsible for, *inter*

---

[2] Jarzyniecki's name is misspelled — and misspelled in different ways — throughout her Affidavit. Moreover, Jarzyniecki therein claims that she resigned because she did not appreciate the way in which plaintiff was terminated; however, Jarzyniecki resigned prior to plaintiff's termination.

*alia*, making the employees' schedules, monitoring the productivity of each stylist, supervising and training the stylists and maintaining defendant's standards throughout the salon. Each salon also has Shift Managers who are responsible for managing the day-to-day operations of the salon in the absence of the Salon Manager.

Plaintiff commenced her employment with defendant on August 29, 2002 as a part-time stylist at defendant's salon in Depew, N.Y., where she was trained in defendant's hairstyling techniques. This was plaintiff's first job as a hairstylist and, as such, plaintiff's supervisors were to monitor her hairstyling techniques to ensure her skill development. On December 6, 2002 plaintiff transferred to a full-time stylist position at defendant's salon in West Seneca, N.Y., where the Salon Manager was Jane Jarzyniecki. Debra Rivera, Bonnie Meredith and Laura Tomilo were the Shift Managers and Alishia Wolf was the Area Supervisor.

Jarzyniecki had had no prior managerial experience and, according to defendant, lacked sufficient control over the salon. Defendant claims that plaintiff, although a new stylist, would direct other stylists in the performance of their job duties and report any misconduct of other stylists to Jarzyniecki and, moreover, allegedly did not get along or work well with the other stylists. Plaintiff disagrees with defendant's claims and contends that she did not direct or have problems working with other stylists.

Plaintiff complained to Wolf that the Shift Managers were overly critical of and excessively strict with her. Wolf told plaintiff that the Shift Managers had more experience than plaintiff and that she should accept their advice in order to improve her skills. Plaintiff claims that Meredith and Tomilo required the stylists to clear their breaks with only the Shift Managers; however, plaintiff alleges that she had to clear her breaks with the Shift Managers and with the other stylists. Plaintiff, in opposition to defendant's Motion, also claims that Rivera told her "you know how you guys are ∗∗∗ [and] get", which plaintiff claims was racist and she told her manager and no action was taken against Rivera.

Plaintiff was verbally counseled for arriving late for her scheduled shift on December 23, 2002 — which she claims was discriminatory because she was the only stylist counseled for tardiness — and on February 3, 2003 for not clocking-out as instructed while receiving a 45-minute manicure — which she claims did not warrant verbal counseling because she was told that she could leave and simply forgot to clock-out. Defendant also asserts that plaintiff experienced difficulties performing certain hairstyles, resulting in plaintiff's co-workers and Shift Managers offering their assistance — which plaintiff allegedly defensively refused — and/or in unhappy customers returning to the salon for a "re-do" haircut — which occurred on February 13, 2003 and twice on February 23, 2003. Plaintiff claims that a "re-do" is not necessarily recorded in an employee's file, but such

records were placed in her file. Defendant claims that it kept written reports of unhappy customers in order to ensure customer satisfaction and improve stylist training. Plaintiff also maintains that she did not have any difficulty performing any hairstyle, but does admit to having problems cutting small children's hair.

In March 2003 plaintiff initially refused but ultimately agreed to cut a child's hair. She, however, stopped cutting the child's hair halfway through the haircut. Rivera allegedly tried to convince plaintiff to continue with the haircut to no avail and had to finish the haircut herself. Rivera was angry with plaintiff and her conduct. Plaintiff claims that she did not want to cut the child's hair because she knew that she would be unable to finish it properly. A week later, Jarzyniecki held a staff meeting, during which Rivera told plaintiff that she was angry about the incident with the child and that she would no longer assist plaintiff unless plaintiff changed her attitude. Plaintiff allegedly started to scream and threatened to hit Rivera. Rivera told plaintiff to "get the fuck away from [her]." Plaintiff then hit Rivera on the side of the head. Other stylists stepped in to stop the altercation and Rivera immediately left the salon. Plaintiff was informed that this behavior would likely result in her termination. Wolf was told about the incident by several employees of the salon and went to the salon to interview those who witnessed the altercation. On March 21, 2003 Wolf met with plaintiff, Rivera, Tomilo and stylist Stephanie Droney. Plaintiff claims that she accidentally

hit Rivera's head — *viz.*, as a result of finger-pointing during the argument —, but does admit that she "struck another employee." (Dent Aff. ¶5.) Plaintiff furthermore claims that Rivera started the incident by being the first to raise her voice. The other witnesses — all of whom agreed as to the course and manner of events — told Wolf that plaintiff was enraged and charged and screamed at Rivera and, in the process, hit her on the side of the head. As a consequence of her investigation, Wolf determined that plaintiff had violated defendant's policy by engaging in conduct with adverse effects on defendant — such as violence in the workplace — and that Rivera had violated defendant's policy by exhibiting unprofessional behavior. Wolf issued Rivera a written warning and terminated plaintiff on March 21, 2003. This suit followed.

Summary judgment may be granted if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCvP 56(c). There is no genuine issue for trial unless the evidence offered favoring the non-moving party would be sufficient to sustain a jury's verdict for that party. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, when reasonable minds could not differ as to the outcome of an issue, summary judgment is appropriate on that issue. *Id.* at 251-252. The moving party initially bears the burden of showing that no genuine issue of material fact is present but the opposing party must then "set forth specific facts

showing that there is a genuine issue for trial." *Id.* at 250.  If the non-moving party fails to establish, after a reasonable opportunity for discovery, the existence of an element essential to that party's claim and on which it will bear the burden of proof at trial, summary judgment is appropriate because such failure to establish an essential element of the case renders all other facts immaterial.  *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986).

When assessing the record in making a summary judgment determination, a court must view all ambiguities and factual inferences in the light most favorable to the non-moving party.  *Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, the non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  FRCvP 56(e); *Gottlieb* v. *County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

The summary judgment standard applies with equal force to discrimination cases as it does in other cases.  *See Ashton* v. *Pall Corp.*, 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) ("[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation.") (quoting *Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  However, courts must be aware of the fact that evidence of discrimination is rarely overt.  *See Bickerstaff* v. *Vassar Coll.*, 196 F.3d 435, 448

(2d Cir. 1999) ("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.") (quoting *Ramseur* v. *Chase Manhattan Bank*, 865 F.2d 460, 464-465 (2d Cir. 1989)).  In addition, courts must "also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Ibid.*  Thus, the issue for the court is "whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances."  *Ibid.*

Defendant, in moving for summary judgment, claims that plaintiff's case should be dismissed because she cannot meet her *prima facie* burden.  Plaintiff alleges that defendant violated Title VII and the NYHRL.  This Court will analyze plaintiff's federal and state law claims together because the Second Circuit applies federal standards of proof to discrimination claims brought under the NYHRL.  *Mandell* v. *County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Torres* v. *Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (finding that claims under NYHRL are analytically inseparable from Title VII claims).  Title VII states that "[i]t shall be an unlawful employment practice for an employer *** to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ***."  42 U.S.C. §2000e-2(a)(1) (2003).  In the absence of direct evidence of

discrimination, Title VII claims are analyzed pursuant to the burden-shifting framework espoused in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and its offspring.  In bringing a case under Title VII, the plaintiff bears the initial burden of making out a *prima facie* case of discrimination.  *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 506 (1993)*; Texas Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 252-253 (1981).  If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the alleged employment action. *Burdine*, at 253 (quoting *McDonnell Douglas*, at 802).  Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Ibid.* (quoting *McDonnell Douglas*, at 804).

   To make out a *prima facie* case of discrimination, plaintiff must show that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she was subjected to an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *McDonnell Douglas*, at 802; *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 38 (2d Cir. 2000).   Defendant asserts that plaintiff, although a member of a protected class — African American — who was terminated, cannot establish that she was performing her job satisfactorily or that

her termination occurred under circumstances giving rise to an inference of discrimination. In the alternative, defendant contends that it can articulate a legitimate, non-discriminatory reason for plaintiff's termination — to wit, that plaintiff physically assaulted another employee —, which plaintiff cannot show is a pretext for discrimination.

Defendant claims that plaintiff disregarded and violated its policies and thus failed to satisfactorily perform her job responsibilities. The Second Circuit has held that the being "qualified" refers to the criteria the employer has specified for the position and requires an inquiry of whether plaintiff has shown "satisfactory job performance" at the time of her discharge. *Thornley* v. *Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) ("Whether job performance was satisfactory depends on the employer's criteria for the performance of the job -- [*sic*] not the standards that may seem reasonable to the jury or judge."). "Satisfactory performance is performing the job at a level that meets the legitimate expectations of the employer. In considering this issue, courts may rely on evaluations prepared by the employee's supervisors." *Cole* v. *Millard Fillmore Hosp.*, 1997 U.S. App. LEXIS 20989, at *4 (2d Cir. 1997) (citation omitted). Plaintiff, essentially, does not dispute her unsatisfactory behavior or that her supervisors were not satisfied with her performance. She admits to being tardy, striking another employee, not being able to cut children's hair and not getting along with

the Shift Managers. She simply argues that others were not treated similarly for the same unsatisfactory behavior. Such is not sufficient to meet her *prima facie* burden. However, the Court will assume *arguendo* that plaintiff has shown that she was qualified for the position.

Defendant claims that plaintiff cannot establish the fourth element of the *McDonnell Douglas* test because she was not treated differently than her co-workers with respect to the terms and conditions of her employment. To meet her burden, plaintiff must show that she was treated differently from employees outside her protected class with whom she was "similarly situated in all material respects." *Shumway* v. *United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation and quotations omitted). What constitutes "all material respects" varies from case to case and must be judged based on (1) whether plaintiff and those she maintains were similarly situated were subject to the same workplace standards, performance evaluations and/or discipline standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 39-40 (2d Cir. 2000). The conduct need not be identical; the acts need only be of "comparable seriousness." *Id.* at 39 (finding that the standard for comparing conduct requires a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's [*sic*] cases, rather than a showing that both cases are identical").

She identifies some stylists who engaged in misconduct, including Rivera, for which she claims they were not punished as severely as was plaintiff. Defendant claims, however, that the stylists whom plaintiff identified did not engage in similar misconduct. Plaintiff was not terminated for being tardy or for not being able to perform certain haircuts; rather, she was terminated for striking a co-worker. *See, e.g., Beshty* v. *Gen. Motors*, 327 F. Supp. 2d 208, 213 (W.D.N.Y. 2004) ("To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process.") (citation and quotations omitted). Plaintiff does not and cannot identify a co-worker who also struck an employee. Plaintiff simply claims that Rivera's conduct was similar to plaintiff's conduct. Such is clearly not the case — unprofessional conduct in the form of verbal attacks is different from unprofessional conduct in the form of physical contact. Again, plaintiff has facially failed to meet her burden.

Moreover, defendant has proffered a legitimate, non-discriminatory reason for terminating plaintiff — *viz.*, plaintiff's unprofessional and offensive behavior. Defendant's evidence need not persuade the Court that it was actually motivated by the proffered reason, but only that there is a genuine issue of material fact as to whether it discriminated against plaintiff. *Burdine*, at 254-255. Such has been met by defendant.

The burden now shifts back to plaintiff to show that defendant's reason is a pretext. Plaintiff tries to do so by claiming that Rivera was not terminated for being a participant in — if not the instigator of — the argument. She does not, however, contest that the argument occurred in the way in which defendant maintains it occurred and that defendant conducted an investigation following the argument. It is undisputed that defendant received and confirmed a report that plaintiff struck Rivera. Whether plaintiff hit Rivera intentionally or accidentally is irrelevant because defendant claims that it based its decision to terminate plaintiff on the belief, subsequent to an investigation, that plaintiff had struck Rivera. *See, e.g., Cruz* v. *Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) ("[E]ven if [plaintiff] herself believed that she was acting in self-defense, she has produced no evidence showing that [her employer] believed that to be the case. She therefore has failed to demonstrate that [her employer] viewed the altercation as anything other than an 'assault' within the meaning of the company's prohibition."); *Agugliaro* v. *Brooks Bros., Inc.*, 927 F. Supp. 741, 744-745 (S.D.N.Y. 1996) (although plaintiff denied the alleged misconduct, the court held that, "[e]ven assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender or pension status"). Plaintiff also claims that defendant's reason is a pretext because Rivera

and the other Shift Managers singled her out in their criticisms. Not getting along with her supervisors or a claim that her supervisors did not like her — whether or not because of race — does not show pretext. *See, e.g., Burroughs* v. *Chase Manhattan Bank, N.A.*, 2005 U.S. Dist. LEXIS 3229, at *13 (S.D.N.Y. 2005). Plaintiff, therefore, cannot show that defendant's proffered reason is a pretext for discrimination.

It is accordingly hereby **ORDERED** that defendant's Motion for Summary Judgment is granted, that defendant's Objections to the Authenticity of the Electronically Filed Documents is denied, that plaintiff's claims are dismissed and that the Clerk of the Court shall close this case.

DATED:   Buffalo, N.Y.

September 19, 2005

*/s/ John T. Elfvin*
JOHN T. ELFVIN
S.U.S.D.J.